**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **VICTOR HUGO ARROYO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 20-cv-2751** |
| | ) | |
| **v.** | ) | **Judge Jeffrey I. Cummings** |
| | ) | |
| **OLDE ENGLISH GARDENS and** | ) | |
| **CHAD STAUBER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Victor Hugo Arroyo brings this action against his former employer, defendants Olde English Gardens and Chad Stauber, for, *inter alia*, unpaid overtime wages in violation of the Fair Labor Standards Act and the Illinois Minimum Wage Law, and unpaid final compensation upon separation in violation of the Illinois Wage Payment Collection Act. On March 18, 2024, plaintiff moved for summary judgment, (Dckt. #90), and filed a Rule 56.1 Statement of Material Facts, (Dckt. #92 ("PSOF")), supporting memorandum, (Dckt. #91), and Local Rule 56.2 Notice, (Dckt. #89). Defendants, currently proceeding without counsel, did not file a response to plaintiff's motion. Plaintiff filed a reply on May 3, 2024. (Dckt. #85). For the reasons set forth below, plaintiff's motion for summary judgment, (Dckt. #90), is granted in part and denied in part.

## I.    LEGAL STANDARD FOR CONSIDERATION OF SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate when the moving party shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Issues of fact are material if they are outcome determinative. *Hottenroth*

*v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004). When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to create factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Instead, it must "marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

Evidence considered on a summary judgment motion "need not be admissible in form, but must be admissible in content, such that, for instance, affidavits may be considered if the substitution of oral testimony for the affidavit statements would make the evidence admissible at trial." *Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 420 (7th Cir. 2016). Furthermore, courts do not weigh the evidence or resolve conflicts in the record at summary judgment; instead, they review the evidence presented in the light most favorable to the non-moving party and draw all reasonable inferences in their favor. *NES Rental Holdings, Inc. v. Steine Cold Storage, Inc.*, 714 F.3d 449, 452 (7th Cir. 2013). Summary judgment is granted only if "no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (cleaned up).

## II. FACTUAL RECORD

### A. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. The rule is intended "to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (cleaned up). Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with

2

Local Rule 56.1(d).  LR 56.1(a)(2).  In turn, Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it.  The court may disregard any asserted fact that is not supported with such a citation."  LR 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e).  If a party fails to respond to the Rule 56.1 statement of uncontested facts, those facts are deemed admitted to the extent they are supported by the evidence in the record.  *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); L.R. 56.1(e)(3).

In this case, plaintiff filed a Rule 56.1 statement of material facts with his motion for summary judgment, (Dckt. #92), which included a proper citation to the evidentiary material supporting each fact.  Because defendants do not have counsel, plaintiff also served them with a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2.  (Dckt. #89).  This notice explains the meaning of a motion for summary judgment, the requirements for responding to both the movant's motion and its Rule 56.1 statement of material facts, and – perhaps most significantly – the consequences of failing to properly respond to a summary judgment motion and statement of material facts under Federal Rule of Civil Procedure 56 and Local Rule 56.1.  Despite this warning, defendants failed to respond to plaintiff's motion for summary judgment at all, let alone submit a response to plaintiff's statement of material facts.  As such, the Court deems plaintiff's statement of material facts admitted to the extent they are supported by the evidence in the record.  *Keeton*, 667 F.3d at 880.  The Court does so even in consideration of defendants' *pro se* status given that plaintiff provided defendants with the requisite Local Rule 56.2 notice to unrepresented individuals.  *See Coleman v. Goodwill Indus.*

3

*of Se. Wisconsin, Inc.*, 423 Fed.Appx. 642, 643 (7th Cir. 2011). Again, as the Seventh Circuit has made clear, "status as a *pro se* litigant does not excuse [defendants] from complying with Local Rule 56.1." *Brown v. Erickson*, No. 16 C 50337, 2019 WL 1532887, at *1 (N.D.Ill. Apr. 9, 2019); *Coleman*, 423 Fed.Appx. at 643 ("Though courts are solicitous of *pro se* litigants, they may nonetheless require strict compliance with local rules.").

### B. Relevant Facts

Defendant Olde English Gardens is a landscaping company that provides lawn maintenance services, the hanging of Christmas lights, and snow removal. ("PSOF ¶2). Defendant Chad Stauber ("Stauber") is the sole and only member or officer of Olde English Gardens, which Stauber testified is set up "like a DBA." (*Id*. ¶1). Apart from an outside accountant who provides some services, Stauber handles the books, accounting, and payroll for Olde English Gardens. (*Id*. ¶3; Dckt. #92-1 at 6). On average, approximately five individuals work for Stauber in the summer, and two to three work for him during the winter. (PSOF ¶3; Dckt. #92-1 at 9-10).

Plaintiff worked for defendants as a laborer between 2010 and July of 2018. (PSOF ¶15). From 2010-2011, plaintiff worked part-time, and from January 2012 onward, he worked full-time. (*Id*.). Between January 2012 through January 2017, plaintiff worked six days a week from 8:30 a.m. to 8:00 p.m. (approximately 72 hours per week). (*Id*. ¶16). From January 2017 through his separation in July 2018, plaintiff worked five to six days a week, on average 54.75 hours per week. (*Id*. ¶17).

Plaintiff's duties while working for defendants included grass cutting, some Christmas light hanging, and snow removal, when required. (Dckt. #92-1 at 15). At all relevant times, Stauber directed and controlled the performance of plaintiff's work after he reported to the

garage each morning, and Stauber typically stayed with his workers on each job for the entire workday "to keep everybody together" and "keep an eye on them." (PSOF ¶¶23-25; Dckt. #92-1 at 10). Plaintiff did not work for his own company at any relevant time when he worked for defendants. (PSOF ¶26).

It is undisputed that in order to get paid for the work he performed, plaintiff (like all of defendants' workers) sent Stauber a text message every week of the number of hours he worked. (*Id*. ¶6). Stauber then multiplied the number of hours worked by plaintiff's hourly rate of pay – which he did not recall at his deposition – and paid plaintiff via check from Stauber's account at TCF Bank that is under his name, "DBA Olde English Gardens." (*Id*. ¶¶5, 9-10). Stauber testified that he did fill out timesheets from the text messages he received, and then tracked the workers' payroll in QuickBooks. (*Id*. ¶7). However, Stauber did not maintain copies of the text messages, the QuickBooks payroll records before 2019, or his old computer which contained the older payroll records. (*Id*. ¶¶7-8,11).

According to plaintiff, defendants failed to pay him overtime wages for the time he worked in excess of 40 hours from July 2016 through July 2018, and any wages for his final week of work. (*Id*. ¶¶18, 21). Instead, plaintiff maintains he was paid his regular rate of pay for all hours worked. (*Id*. ¶19). Plaintiff has submitted a spreadsheet reflecting the overtime hours for which he was not properly compensated, amounting to approximately $41,250 remaining due. (*Id*. ¶20; Dckt. #92-3). When asked about the spreadsheet at his deposition, defendant Stauber did not deny that plaintiff worked the hours claimed, but instead stated that he did not know if plaintiff worked those hours. (PSOF ¶12; Dckt. #92-1 at 19). In Stauber's view, plaintiff is not entitled to any additional overtime pay because he "was a 1099 employee." (PSOF ¶14; Dckt. #92-1 at 19).

5

In his five-count complaint, filed in May 2020, plaintiff asserted claims against defendants for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq*., and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq*., for failure to pay overtime wages and for his final week of work (Counts I and II, respectively); violation of the Illinois Wage Payment Collection Act, ("IWPCA"), 820 ILCS 115/1 *et seq.*, for failure to pay his final compensation in full at the time of separation (Count III); violation of the Illinois Personnel Record Review Act, 820 ILCS 40/1 *et seq.*, for failure to permit plaintiff to inspect his personnel file (Count IV); and for quantum meruit (Count V). Defendants answered the complaint, (Dckt. #12), and – after settlement efforts failed – the parties proceeded with discovery. The instant motion for summary judgment followed.

## III.    ANALYSIS

Plaintiff now moves for partial summary judgment in his favor on his claims based on defendants' alleged violation of the FLSA (Count I), the IMWL (Count II), and the IWPCA (Count III). Again, defendants failed to respond to the motion. For the following reasons, plaintiff's motion is granted in part and denied in part.

**A.    Plaintiff's motion for summary judgment is denied with respect to his claim under the FLSA (Count I) because he has failed to show that either he or defendants were "engaged in commerce" as required to invoke the protections of the FLSA.**

"Congress enacted the FLSA in 1938 to protect workers 'from the evil of overwork as well as underpay.'" *Godinez v. Classic Realty Grp.-IL, Inc.*, No. 22 C 1400, 2024 WL 3442960, at *5 (N.D.Ill. July 16, 2024), *quoting Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). Among other things, the FLSA provides that any employee "who in any workweek is *engaged in commerce or in the production of goods for commerce*," and who works more than forty hours in a week, must be paid by his "employer" for the excess hours at one and one-half

6

times the regular rate of pay. 29 U.S.C. §207(a)(1) (emphasis added). As an initial matter, the "FLSA only imposes overtime wage requirements for employees 'engaged in commerce or in the production of goods for commerce,' [i.e., individual coverage] or who are 'employed in an enterprise engaged in commerce or in the production of goods for commerce [i.e. enterprise coverage].'" *Markle v. Drummond Advisors, LLC*, No. 19-CV-2789, 2020 WL 777272, at *4 (N.D.Ill. Feb. 18, 2020). The Supreme Court has cautioned that the phrase "engaged in commerce" under the FLSA should be "construed liberally to apply to the furthest reaches consistent with congressional direction." *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959).

Unfortunately, even construing the language of the FLSA liberally, plaintiff has failed to allege *any* facts or provide *any* evidence that would allow this Court to determine, as a matter of law, that plaintiff is entitled to the protections of the FLSA whether under individual coverage or enterprise coverage.[1]

### 1. Plaintiff has failed to establish he is covered under the FLSA's individual coverage.

"Individual coverage under the FLSA applies when the employee's work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated, local activity." *Macias v. All-Ways, Inc.*, No. 16-CV-6446, 2017 WL 2278061, at *2 (N.D.Ill. May 25, 2017) (cleaned up). "There is no precise formula or definition for determining whether employees are 'engaged in commerce' for purposes of individual coverage." *Reyes v. ML Enterprises*, No. 21-C-0437, 2022 WL

---

[1] To be clear, following the Supreme Court's decision in *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006), courts have regularly confirmed that whether a plaintiff can establish coverage under the FLSA is an element of plaintiff's claim. *See, e.g.*, *Mero v. Am. Ice Prod. II, Inc.*, No. 21CV1684LDHMMH, 2023 WL 6385722, at *3 (E.D.N.Y. Sept. 29, 2023); *Monshi v. Bhuiyan*, No. 18-CV-00002, 2018 WL 11027256, at *3 (D.N.Mar.I. June 7, 2018).

18025222, at *4 (E.D.Wis. Dec. 30, 2022). Instead, "[t]he question whether an employee is engaged 'in commerce' within the meaning of the FLSA is determined by practical considerations, not by technical conceptions." *Id.* (cleaned up).

Here, plaintiff is a laborer for a local landscaping company that performs only local jobs in the Chicagoland area. As courts have held, this is the very type of work that amounts to "isolated local activity" not entitled to individual coverage under the FLSA, and plaintiff has otherwise failed to submit any evidence that he ever performed jobs or transported items across state lines. *See Jacoby v. Schimka Auto Wreckers, Inc.*, No. 10 C 1452, 2010 WL 3171515, at *4 (N.D.Ill. Aug. 11, 2020) (dismissing FLSA claims on summary judgment because tow truck company's employee performed "isolated local activity" and only tangentially used tools that might have moved in interstate commerce); *see also Roos v. Tomorrow Sols., LLC*, No. 121CV02576TWPMPB, 2023 WL 3161035, at *4 (S.D.Ind. Apr. 28, 2023) ("Roos' local handling of hemp plants for a business that only sells products within Indiana is too far removed from interstate commerce to entitle Roos to coverage under the FLSA's wage provisions").

With respect to plaintiff's use of his cell phone to text Stauber his hours each week, this too is insufficient to establish individual coverage because plaintiff was not using his phone to contact Stauber *across state lines. See Shoemaker v. Lake Arbutus Pavilion, LLC*, 115 F.Supp.3d 974, 979–80 (W.D.Wis. 2015) (individual coverage not established where plaintiffs failed to submit evidence they used interstate mail, telephone, and the internet across state lines); *cf. Markle*, 2020 WL 777272, at *5 (individual coverage properly pled where plaintiff alleged "that she regularly and repeatedly used channels of interstate commerce in her work, including sending and receiving *interstate* emails and making and receiving *interstate* phone calls") (emphasis added).

For all of these reasons, plaintiff has failed to establish he is entitled to individual coverage under the FLSA.

### 2. Plaintiff has failed to establish defendants are covered under the FLSA's enterprise coverage.

"Enterprise coverage occurs when an employee is employed in an enterprise engaged in commerce or in the production of goods for commerce." *Mays v. Rubiano, Inc.*, 560 F.Supp.3d 1230, 1238 (N.D.Ind. 2021); 29 U.S.C. §207(a)(1). For enterprise coverage to apply, "the business must (1) have employees engaged in commerce and (2) have an annual gross volume of sales made or business done of at least $500,000." *Mays*, 560 F.Supp.3d at 1238.

Here, even assuming for the sake of argument that defendants were engaged in commerce by way of their use of machines, gas, and cell phones in carrying out the business, *see Solis v. Int'l Detective & Protective Serv., Ltd.*, 819 F.Supp.2d 740, 748 (N.D.Ill. 2011), plaintiff has not submitted *any* evidence that would support a finding that defendants have an annual gross volume of business of at least $500,000. In fact, the only evidence regarding defendants' volume of business shows that defendants generated revenue well under that amount even in their busiest season. (*See* Dckt. #92-1 at 19-20 (discussing $237,285.10 owed from customers between June and August of 2020)). Because plaintiff has failed to provide evidence that defendants generated $500,000 in annual business, he has not properly established enterprise coverage. *See Macias*, 2017 WL 2278061, at *3; *Jacoby*, 2010 WL 3171515, at *3.

For these reasons, plaintiff has failed to present evidence sufficient to establish either individual coverage or enterprise coverage under the FLSA and his motion for summary judgment on the FLSA claim is denied.

**B.     Plaintiff's motion for summary judgment is granted with respect to his claim under the IMWL (Count II) because there is no genuine dispute of material fact, and he is entitled to judgment as a matter of law.**

The FLSA and the IMWL provide parallel wage protection for Illinois workers such that "courts have generally interpreted their provisions to be coextensive, and . . . have generally applied the same analysis to both."[2] *Callahan v. City of Chicago*, 78 F.Supp.3d 791, 821 (N.D.Ill. 2015) (citing *Condo v. Sysco Corp.*, 1 F.3d 599, 601 n.3 (7th Cir. 1993)). Of course, the IMWL only applies if an employer-employee relationship exists between the plaintiff and defendants. *Jones v. Miss Kitty's Inc.*, No. 3:23-CV-1327-MAB, 2024 WL 2846600, at *4 (S.D.Ill. June 5, 2024) ("The protections afforded by the IMWL . . . only appl[ies] to *employees*, not independent contractors."). If such a relationship is established, the plaintiff must then clear two hurdles to prevail on his claim under the IMWL: "first, the plaintiff must show that []he worked overtime without compensation, and second, the employer had actual or constructive knowledge about [his] overtime work." *Brown v. DS Servs. of Am., Inc.*, 246 F.Supp.3d 1206, 1220 (N.D.Ill. 2017), *adhered to on denial of reconsideration*, No. 15 C 1794, 2017 WL 11885699 (N.D.Ill. May 18, 2017) (citing *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 176-77 (7th Cir. 2011)).

**1.     An employer-employee relationship existed between plaintiff and defendants.**

To determine whether an employer-employee relationship exists for purposes of the IMWL, courts apply an "economic reality" test, which scrutinizes the potential employee's "economic dependence" on the potential employer. *Godinez*, 2024 WL 3442960, at *5. The

---

[2] Notably, however, the IMWL does not include the "engaged in commerce" requirement of the FLSA. *See* Christopher Keleher, *The Perils of Unpaid Internships,* 101 Ill. B.J. 626, 629 (2013) ("Workers not covered by the FLSA because they or their employers are not engaged in interstate commerce are protected by the IMWL.").

Seventh Circuit applies a six-factor, totality-of-the-circumstances test – set out in *Secretary of Labor v. Lauritzen*, 835 F.2d 1529, 1535 (7th Cir. 1987) – to determine an individual's economic dependence on a potential employer. *Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 665 (7th Cir. 2022); *see also Godinez* 2024 WL 3442960, at *9 (confirming this FLSA test applies equally to IMWL claims)).

The six factors are:

(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;

(2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;

(3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;

(4) whether the service rendered requires a special skill;

(5) the degree of permanency and duration of the working relationship; [and]

(6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Lauritzen*, 835 F.2d at 1535. "No single factor is necessarily controlling – the ultimate conclusion on employee status is made by examining the totality of the circumstances." *Brandt*, 43 F.4th at 665.

Applying these factors here supports a finding that plaintiff was in an employer-employee relationship while working for defendants notwithstanding Stauber's testimony he believed he was a "1099" employee (i.e., independent contractor). First, Stauber himself testified to exercising a high degree or control over plaintiff's work when he directed the employees to each individual job site and, for the most part, stayed on site during every single job to keep an eye on the work being performed. *See Brant*, 43 F.4th at 667 (noting that a "high degree of scrutiny into

11

the fine details" of the employee's job "weighs in favor of status as an employee rather than an independent contractor."). Moreover, the record before the Court contains no evidence that plaintiff – who worked for defendants for eight continuous years – ever supplied his own tools (i.e., mowers, shovels, snow blowers, etc.); required any particularly special skills to perform his job duties; or, at any relevant times, performed any other work for other companies. *See Isabel v. Maniar*, No. 20-CV-1223, 2024 WL 4346672, at *7 (N.D.Ill. Sept. 30, 2024) ("The more permanent the relationship, the more likely the worker is to be an employee.") (cleaned up); *In re FedEx Ground Package Sys., Inc.*, 869 F.Supp.2d 942, 985 (N.D.Ind. 2012) ("That a worker supplies his own tools is some evidence that he *isn't* an employee.") (emphasis added); *Brandt*, 43 F.4th at 671 ("Excellence at any occupation can be said to require skills, but this inquiry is focused on specialized skills that set the independent contractor apart from other workers").

In sum – and with no conflicting evidence or argument from defendants on this point – "the economic reality of the relationship here is one of employer-employee," *Mays*, 560 F.Supp.3d at 1236, and plaintiff is entitled to the protections of the IMWL.

**2.** **The undisputed evidence shows that plaintiff was not compensated for overtime hours he worked of which defendants were aware.**

Having established the requisite employer-employee relationship, plaintiff need only show that he worked overtime without proper compensation and that defendants had actual or constructive knowledge about his overtime work. *Brown*, 246 F.Supp.3d at 1220. Plaintiff has undoubtedly made such a showing here. Indeed, having already deemed plaintiff's statement of material facts admitted, it is undisputed that plaintiff worked overtime hours between July 2016 and July 2018 for which he was not properly compensated under the IMWL. Moreover, Stauber's deposition testimony reflects that he primarily stayed on site during every job and thus would have actual knowledge of the hours plaintiff worked. This is sufficient to establish

12

liability under Count II.  *See Furgason v. Furrer*, No. 1:12-CV-00738-RLY, 2013 WL 5487366, at *4 (S.D.Ind. Sept. 30, 2013) (granting summary judgment where the undisputed evidence showed that plaintiff was not paid one and a half times his normal hourly rate for hours worked over 40 in each week).

For these reasons, plaintiff's motion for summary judgment is granted with respect to Count II and judgment as to liability is entered in favor of plaintiff and against defendants Olde English Gardens and Chad Stauber on Count II.

### C.    Plaintiff has failed to establish he is entitled to judgment as a matter of law with respect to his claim under the IWPCA (Count III).

The IWPCA requires, among other things, that employers in Illinois pay their employees at certain times, including the payment of final compensation "at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee."  820 ILCS §115/5; *Cho v. Maru Rest., Inc.*, 194 F.Supp.3d 700, 705 (N.D.Ill. 2016).  However, the IWPCA, "mandates payment of wages *only to the extent* the parties' contract or employment agreement requires such payment."  *Hoffman v. Roadlink Workforce Sols., LLC*, No 12 C 7323, 2014 WL 3808938, at *4 (N.D.Ill Aug. 1, 2014) (emphasis added); *Jaramillo v. Garda, Inc.*, No. 12 C 662, 2012 WL 1378667, at *2 (N.D.Ill. Apr. 20, 2012) ("The IWPCA merely demands that employers pay whatever wages were agreed to.").  As such, to prevail on a claim under the IWPCA, plaintiff must demonstrate, "as a matter of law, that there was a manifestation of mutual assent between the parties to certain terms and that [plaintiff] was underpaid according to those terms." *Freeland v. Lorenzini & Assocs., Ltd.*, No. 19 CV 07888, 2024 WL 3251584, at *7 (N.D.Ill. July 1, 2024).

Here, plaintiff has failed to present evidence (or even alleged in his complaint) that he had an agreement with defendants – written or otherwise – regarding the terms of his

employment which defendants violated by failing to pay his final compensation. Instead, plaintiff appears to rely entirely on defendants' purported violations of the FLSA and IMWL for their failure to pay overtime wages to support his claim under the IWPCA. However, a "violation of the FLSA or the IMWL alone, without a corresponding violation of an employment contract or agreement . . . cannot establish a violation of the IWPCA." *Cho*, 194 F.Supp.3d at 705; *see also Brand v. Comcast Corp.*, No. 12 CV 1122, 2013 WL 1499008, at *6 (N.D.Ill. Apr. 11, 2013) ("[P]laintiff must point to an agreement supporting the IWPCA claim that is more than an allegation that the employer is bound by existing overtime laws.").

Because plaintiff has "not offered sufficient evidence that would enable the Court to hold, as a matter of law, that the parties entered into an agreement *and to define its terms* and that [plaintiff] was underpaid according to that agreement," plaintiff's motion for summary judgment on his IWPCA claim (Count III) is denied. *Freeland*, 2024 WL 3251584, at *7 (emphasis added).

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is granted in part and denied in part. By December 2, 2024, plaintiff shall file a status report indicating whether he intends to pursue his remaining claims in light of the holding in this Opinion, which granted him summary judgment on his Illinois Minimum Wage Law claim and will entitle him to monetary relief.

**DATE: November 21, 2024**

Jeffrey I. Cummings
**United States District Court Judge**

14